OCTOBER TERM, 1883.   No. 110.            OCTOBER 18, 1883.

## Riddle *v.* Thompson *et al.*

1. Defendants assigned a judgment to the plaintiff and guaranteed " payment thereof in one year from this date." *Held,* that the defendants were sureties, and that on failure of the principal to pay, their obligation became absolute.

2. The plaintiff, at the time of the assignment, verbally agreed with the principal in the judgment to extend the time of payment, and the extension was afterward, without the knowledge of the sureties, incorporated into an amicable agreement to revive the judgment and was filed of record. *Held,* that the sureties were discharged.

[Riddle *v.* Thompson *et al.*]

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

Error to Court of Common Pleas of *Butler County.*

*Assumpsit* by Samuel L. Riddle, Sr., against Josiah M. Thompson, Solomon R. Thompson, Allen Wilson, and John C. Martin.

Upon the trial in the Court below, before BREDIN, J., the following facts appeared:

Col. John M. Thompson, of Butler, Pa., was appointed the committee of Henry Shakley, an habitual drunkard, in proceedings instituted for that purpose in the year 1875, and was required to give bond with security approved by the Court. He gave a judgment in favor of Daniel Fiedler and the defendants, who were the parties whom the Court approved as security on his bond, in the sum of fifteen thousand dollars, for their protection. Subsequently, Dr. Stephen Bredin was appointed the successor of Thompson in the trust. In order to pay the balance due, Thompson obtained from Samuel L. Riddle, through his son and agent, W. H. H. Riddle, Esq., a loan of $15,000.

As security for this loan, Thompson applied to and received from the defendants an assignment in blank of the judgment confessed in their favor, together with an agreement to pay the same, which set forth: "For value received we assign this judgment to                      and guarantee payment thereof in one year from this date."

Thompson went to Riddle's office, and in his presence, and in the absence of the defendants, filled up the paper, inserting the date, "January 8, 1878," and the name of the assignee, "Samuel L. Riddle, Sr."

Riddle took from Thompson his written statement that he had no defense to the judgment, and that it was a lien against certain real estate. A verbal agreement was at the same time made between Thompson and Riddle, that one half of the sum loaned was to be paid in one year and one half in two years from the date of the loan, to wit: January 8, 1878, and that the judgment should bear interest from the date of the assignment.

On April 22, 1879, the following agreement between John M. Thompson and W. H. H. Riddle, attorney for the plaintiff, was filed of record upon the judgment:

"It is agreed that the prothonotary of said court enter an amicable *scire facias* upon the above judgment with the same effect as if a *scire facias* to revive the same had been regularly issued, served personally on the defendant

[Riddle *v.* Thompson *et al.*]

by the sheriff of said county, and duly so returned, and that a judgment be entered thereon in favor of the plaintiff, and against the defendant, for the sum of $16,160, the one half due January 8, 1879, and the remainder January 8, 1880, amount of debt, interest, and cost now due on the original judgment.

Dated April 22, 1879.''

Executions were issued on the judgment, and all the real estate of Thompson, the defendant therein, sold, and the sum of $7,413 11 realized. Before the sale, notice in writing was served on the defendants in this case of the time and place of sale. This suit was then brought to recover the balance.

The Court charged the jury, *inter alia,* as follows :

''Then the only other question in the case is whether Mr. Riddle, by agreeing to give Thompson time for the payment of this judgment without the consent of these defendants, who assigned him the judgment, has thereby discharged and released the defendants from their liability on this paper. That is a question of law that the Court can reserve to be argued at length, and take time to fully consider it. Therefore, for the time being, not, of course, intimating how it may be decided finally, we merely instruct the jury on it, and afterwards give judgment whichever way we think the authorities and law may lead. We instruct the jury, for the time being, as far as the case is now before them, that the giving of time does not release the defendants, and we reserve that question ; and if we are of opinion hereafter that Riddle, by giving that time, did release the defendants, we can enter judgment in that way without calling a new jury. That is the reason why we want to reserve the question, and then it can be settled without calling a new jury without putting the parties to the expense of a new trial, and it can go to the Supreme Court at once. That is the only other question in the case.''

October 16, 1882. Verdict for plaintiff for $10,208 30.

May 21, 1883. The Court filed an opinion upon the questions reserved, *inter alia,* as follows :

''The third defense is that the extension of time released defendants from their liability as guarantors. The facts in regard to the extension were undisputed, and we reserved that question. We have made a careful examination of the authorities, and while, if not 'read between the lines,' some of the decisions may seen irreconcilable and contradictory, we think the principles that govern are well settled, and have no doubt that, by the extension

[Riddle *v.* Thompson *et al.*]

of time, the defendants were released from their liability as guarantors.

"Though defendants were guarantors, their guaranty was a special one. Their contract was to pay in one year if Thompson did not. Riddle was not found to use ordinary diligence, or, indeed, to make any effort to collect the judgment in the meantime, but could at once at the end of the year sue the defendants.

"In such a case, 'a guarantor is a species of surety, and is discharged from his liability if the creditor, by a subsequent valid contract, give time to the principal.' Campbell *v.* Baker, 10 Wright, 243.

"This decision, which has never been overruled but frequently quoted by the Supreme Court and its authority recognized, would seem authority sufficient on this point, but as there seems to be some confusion with other cases, we quote from Talmage *v.* Burlingame, 9 Barr, 24.

"'The truth is the contract of the surety, is with the creditor and not with the debtor . . . The most familiar instances are furnished by indorsements of negotiable instruments and guaranty of bonds and other choses in action, assigned or transferred by the guarantors. No one has ever thought of calling the validity of these contracts into question, nor has it ever been doubted that those entering into them are entitled to the advantage of every equity ordinarily attendant upon suretyship.'

"For all practical purposes, the guarantors, in name the defendants, stand in the position of sureties, and must have the privileges as well as be subject to the burdens of the position they assumed by assigning and guaranteeing the payment of the judgment within a definite time.

"In the case of Clippinger *v.* Creps, 2 Watts, 48, Creps accepted a confession of judgment from Cring, the principal debtor, with a stay of execution for one year, which Cring was not entitled to claim without entering security therefor, by reason of his real estate being incumbered by liens, and it was held that Clippinger, the surety of Cring in the note, was discharged, the Supreme Court saying: 'If a creditor, by any contract which can be enforced against him at law or in equity, gives time to the debtor, he discharges the sureties;' and again they say the surety stands upon his contract, and is discharged from all obligation if any alteration is made in it without his consent, even where the arrangement so made is for his benefit. In that case, there was no allegation that the creditor received anything, or that the debtor agreed to

do or pay anything for the extension granted. Indeed, it seems to have been rather a case of mutual mistake as to debtors' right to a stay on the judgment. But however that may be, the creditor, as in this case, tied his hands by a valid contract, one he could not recede from, one that could be enforced against him, one in which the law implies a consideration, and to which it holds him, and the result was the same as though a valuable consideration had been paid as agreed on for granting the stay.

" The judgment on the *Sci. Fa.* in this case is a judgment of the Court. The law makes it the duty of the prothonotary to enter such a judgment with stay of execution as agreed on by the parties; the plaintiff having by his attorney accepted the judgment, could not disregard it or treat the stay or extension of time as though no part of it and of no validity. By this act, he forever deprived himself of the power to restore defendants to the position they occupied in regard to the judgment at the time of their assignment of it to him; he has interfered with their rights against the debtor and has released them from their engagement to him as guarantors. When we say that the law implies a consideration in a case such as this, we do not wish to be understood as holding that there was not a consideration in fact. While Riddle had the right to proceed to collect the judgment at once, Thompson had the right to pay the same at any time and stop the running of the interest thereon. Riddle, on the one hand, waived his right to proceed. Thompson, on the other, waived his right to pay. We have no doubt that such mutual promises and waivers make a good consideration in law. The last decade has afforded many instances where money-lenders have been anxious to induce their debtors to make just such contracts, when the legal rate of interest was higher than that obtainable by investment in other good securities. For what is a sufficient consideration to support a contract, see Hind *v.* Holdship, 2 Watts, 105.

" In coming to our conclusion that defendants are discharged, we have not noticed the fact that Thompson verbally agreed to pay an attorney's commission for collection, and base nothing thereon, as the question whether it affected the contract for extension was not submitted to the jury.

" Nor have we thought it necessary to rest anything on the fact that Riddle, in the revival of the judgment, undertook to decide when interest commenced to run on the

judgment, and calculated interest from the delivery of the paper of guaranty, January 9, A. D. 1878.

"The indemnity judgment did not on its face bear interest. Whether the default having occurred before its entry, it would carry interest from that date, or only from the time of proceedings to collect, or whether Riddle could claim any interest from the guarantors, their guarantee saying nothing about interest until the expiration of the year, are questions that might be material and important. We can see no good reason why the date of delivery of the guaranty should be taken as the proper date from which interest should be charged on the judgment. An agreement between the assignee and debtor that interest should be paid in the meantime on a judgment not bearing interest, or an agreement by which they changed the date from which interest would lawfully run, might be under the authorities such an alteration of the contract as would release the sureties. However that may be, we are clear that the agreement to extend the time made when the money was advanced, and afterwards embodied in the judgment on the amicable *Scire Facias*, on the 22d of April, A. D. 1879, released and discharged Josiah M. Thompson, Solomon R. Thompson, and John C. Martin, the defendants, served, from their contract as guarantors with Riddle, and that he has no recourse against them. We do therefore enter judgment in favor of the defendants *non obstante verdicto*, May 21, 1883."

Plaintiff then took out a writ of error, and assigned the following errors:

The Court erred in entering judgment for the plaintiff "*non obstante verdicto*" on the reserved question of law, viz: Did Riddle by giving Thompson time, or extending the time of payment of the judgment, release the guarantors of the judgment, (the defendants in this case.)

The Court erred in holding that the assignment of the judgment by defendants in this case to the plaintiff was not a guaranty, but created the relation of surety.

The Court erred in not holding the assignment and guaranty sued on was a guaranty, and binding on defendants, and that the act of the plaintiff in extending the time did no injury to the defendants and that they are still liable.

The Court erred in entering judgment for the defendants on the reserved questions.

*Charles McCandless* and *W. H. H. Riddle* for plaintiff in error.

[Riddle v. Thompson *et al.*]

The paper sued on was a guaranty.    It was a collateral agreement that the judgment was valid and binding, and that if the defendant did not pay it, the guarantors would.   If the guarantors are not injured by the extension of the time of payment, they are not discharged from liability : Follmer *v.* Dale, 9 Barr, 83 ; 4 Greenl., 521 ; 8 Conn., 426 ; 46 Barb., 194 ; 45 Penna. St., 186 ; 64 *Id.*, 242 ; 69 *Id.*, 311 ; 77 *Id.*, 143 : 79 *Id.*, 436 ; 59 *Id.*, 95.

The agreement to extend the time was without consideration ; and even if the defendants were sureties, they are not released : 35 Penna. St., 492; 36 *Id.*, 519 ; 73 *Id.*, 182 ; 3 *Id.*, 437 ; 59 *Id.*, 351 ; 40 *Id.*, 146 ; Chitty on Contr., 421 ; 10 Cal., 419 ; 30 Geor., 249 ; 8 Blatchf., 190 ; 6 Ind., 113, 461 ; 16 Me., 72 ; 10 N. H., 162 ; 13 Vt., 353 ; 14 Miss., 24 ; 5 *Id.*, 684 ; 8 Mo., 49, 316 ; 4 Blatchf., 241 ; 5 *Id.*, 367 ; 13 Ohio, 84 ; 17 Miss., 470 ; 7 B. Mon., (Ky.,) 217 ; 31 Mo., 459 ; 2 Paige, 497 ; 2 Johns., 554 ; 1 Bland, (Md.,) 528 ; 4 Rand, (Va.,) 103 ; 10 Yerger, (Tenn.,) 362 ; 10 Paige, 76 ; 36 Penna., 517 ; 46 Barb., 194.

*J. D. McJunkin, R. P. Scott*, and *T. C. Campbell* for defendants in error.

The language of the instrument sued on shows that the responsibility was to be immediate.   The defendants were, therefore, sureties : 11 W. N. C., 392 ; 10 Wr., 243 ; 2 P. F. Sm., 440 ; 29 *Id.*, 468 ; 1 Phila., 70 ; 1 Miles, 276 ; 1 Gr., 261 ; 1 Jones, 482 ; 13 Wr., 259 ; 21 P. F. Sm., 139 ; 4 Harris, 9 ; 9 Casey, 111.

By an extension of time without his consent, the contract of the surety is absolutely broken.

Changing the date of interest from parol to matter of record and fixing the liability absolutely instead of conditionally, constitute a sufficient consideration for extending the time : Clippinger *v.* Creps, 2 Watts, 48.

OCTOBER 29, 1883.—PER CURIAM: While there is a radical difference between the liability of a surety and one who assumes a collateral obligation to guarantee the payment of the debt of another, yet the language of the agreement which shall constitute the one or the other has not always been clearly defined by the authorities.   In the present case, we think the language used made the defendants in error sureties.   They agreed the judgment should be paid at a time specified.   On failure of the principal debtor to pay then, the obligation of the defendants in error to pay became absolute.   The assignee could proceed against them at once.   He was not required to

[Barnes *v.* Berwind *et al.*]

pursue the original principal debtor to insolvency, nor even to issue execution against him. The plaintiff in error clearly extended the time of the payment. He arranged with the defendant in the judgment whereby the latter confessed a revival of the judgment with the extension of time incorporated therein. The confession of revival was a sufficient consideration for the extension of time therein agreed to be given. Had execution issued before the expiration thereof, it would have been set aside on motion of the defendant in the judgment. The learned judge ruled the case correctly.

Judgment affirmed.